UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON COLLYMORE,<br>Defendant. | Criminal Case No. 21-073-AK |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States and Defendant, **JASON COLLYMORE**, have reached the following agreement:

1. Defendant's Obligations.

    a. Defendant will plead guilty to Count One of the Indictment which charged the defendant with threatening of a federal officer with bodily harm with intent to impede, intimidate, or interfere with the federal officer while he was engaged in the performance of his official duties, or with the intent to retaliate against the federal officer because of the performance of his official duties, in violation of 18 U.S.C. § 115(a)(1)(B).

    b. Defendant will admit to the violations alleged in the Amended Petition for Warrant for Offender Under Supervision in Cr. No. 09-160.

    c. Defendant further agrees that the time between the filing of this plea agreement and the scheduled date for the change of plea is excludable under the Speedy Trial Act, 18 U.S.C. § 3161.

2. Government's Obligations. In exchange for Defendant's plea of guilty:

 a. The United States and Defendant will recommend to the Court, as a reasonable sentence, that Defendant be sentenced to a term of incarceration of time served on both Cr. No. 21-73 and the violation alleged in Cr. No. 09-160. The parties understand that if this plea agreement is accepted by the Court, the Court will impose a sentence of time served. Defendant is aware that his sentence is within the sound discretion of the Court. Defendant further understands that under Rule 11(c)(1)(C), the Court may accept or reject the plea agreement, or may defer its decision as to its acceptance or rejection until it has considered the presentence report. If the Court rejects the plea agreement, the Court shall, on the record, inform the parties of this fact, and afford Defendant an opportunity to withdraw the guilty plea and admission to the violation, and advise Defendant that if Defendant persists in a guilty plea and admission to the violation, the disposition of the case may be less favorable to Defendant than that contemplated in the plea agreement. In addition, as part of the terms and conditions of this plea agreement, the parties agree that should the Court reject the plea agreement, the United States reserves its right to withdraw from its obligations under the same.

 b. For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

    c. The government is free to recommend any combination of supervised release, fines, and restitution which it deems appropriate.

3. Defendant understands that the guidelines are not binding on the Court, and that, although the Court must consult the guidelines in fashioning any sentence in this case, the guidelines are only advisory, and the Court may impose any reasonable sentence in this matter up to the statutory maximum penalties after taking into account the factors enumerated in 18 U.S.C. § 3553(a).

4. The United States and defendant stipulate and agree to the following facts: Derek Dufresne is a United States Probation Officer who serves the U.S. District Court inthe District of Rhode Island. Officer Dufresne is a federal employee and is considered an officer of the federal court system. His official duties include the supervision of persons who have completed federal sentences of incarceration and are serving terms of federal supervised release. As part of his official duties, Dufresne seeks to ensure that that the individuals he is assigned to supervise comply with the conditions of their release as ordered by the federal court when it imposed sentence.

In January 2020, Officer Dufresne was assigned to supervise Collymore upon the completion of Collymore's release from incarceration in July 2020. In preparation for this assignment, Dufresne reviewed the presentence investigation report (PSR) prepared by the Probation Department in connection with Collymore's 2011 conviction. As is standard practice,the PSR included the specific charges of which Collymore had been convicted as well as a description of the underlying facts of that crime. From the case file Dufresne ascertained that possession of a firearm was an

element of Collymore's conviction and that his sentence had included both a prison term and a term of supervised release to follow.

Collymore's term of supervision by Dufresne commenced in July 2020. Shortly after beginning his supervising duties they discussed Collymore's criminal conviction and what Collymore's period of supervision by Dufresne would involve. Collymore was aware that Dufresne knew that Collymore's offense of conviction involved a firearm.

In June 2021, Collymore and Dufresne had two discussions over Collymore's failure to attend sessions of his "Moral Reconation Therapy" (MRT), participation in which was a condition of the HOPE Court program in which Collymore was enrolled. On June 22, 2021, the day after the second of these altercations, Collymore failed to attend his required MRT session. On June 23, 2021, Collymore called Dufresne multiple times and was rude and combative during these calls. Collymore told Dufresne that he was recording one of the calls and intended to post it on social media so that everyone could see that Dufresne was a "piece of shit" and a "fucking asshole." Collymore then failed to attend an MRT on June 24, 2021, and also failed to attend a session of Hope Court on that day that was being held virtually via Zoom.

On June 25, 2021, which was a Friday, Dufresne contacted Collymore to discuss Collymore's residence and current situation. During the call, Dufresne was traveling in a car in Rhode Island along with his supervisor, Heather McLaughlin, while Collymore indicated he was speaking from Braintree, Massachusetts. The audio of the telephone call was broadcast over the car's Bluetooth speakers, and McLaughlin (who

was a passenger in the car) was therefore able to successfully record a substantial portion of the call. During the call, Collymore asserted, in part, that:

- Collymore would call a meeting at the courthouse on Monday and bring the "whole gang" to make his grievances known;
- "You're done [Officer Dufresne]";
- "I'm going to wash you up and put you through the washer, motherfucker. I promise you that";
- "It's a whole gang coming at you, don't worry about it. You're done [Officer Dufresne], I'm going to wash you up, I promise you. You know when someone tells you something and then it happens and then you're sitting there like how the fuck did he do that?";
- "I am going to wash your punk ass the fuck up, mother fucker";
- "Tell your wife, we have to fucking remortgage the house, I'm going to buy your house and kick you out";
- "So let me tell you what in jail happens...You don't lie to motherfuckers. You don't play games with motherfuckers because a life is involved. You can't just say that uh he's a rat cause all three are going to be standing there and the person that lying, they gone die." (Collymore had accused Officer Dusfresne of lying to him)
- "I'll see you on Monday, pussy."

Given Officer Dufresne's knowledge of Collymore's criminal history, he construed Collymore's comments as a threat to physically harm him. Particularly given that Officer Dufresne took great pains to keep his personal life private, he was likewise unnerved by Collymore's references to his wife and home and was concerned for his family's well-being.

A reasonable person in Collymore's circumstances would foresee that the statements he made would be interpreted by Dufresne as a serious expression of an intent to inflict bodily harm. Further, Collymore made these threats of bodily harm with the intent to impede, intimidate, or interfere with Officer Dufresne's carrying out of his official duties as a probation officer, or with intent to retaliate against Dufresne on account of his performance of his official duties. He reported the threat up his chain of command, and, under the circumstances, his superiors decided to seek a warrant for Collymore's arrest. As it happened, Dufresne was scheduled to leave the state with his family for a week's vacation and therefore did not need to seek protection from the U.S. Marshal's office between the making of the threat and Collymore's arrest.

5. Except as expressly provided in the preceding paragraph, there is no agreement as to which Offense Level and Criminal History Category applies in this case. Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guidelines calculation.

6. The maximum statutory penalties for the offense to which Defendant is

pleading are:

    (i) Count One: 6 years imprisonment; a fine of $ 250,000; a term of supervised release of 3 years; a mandatory special assessment of $100.

7.    Defendant agrees that, after Defendant and Defendant's counsel sign this plea agreement, counsel will return it to the United States Attorney's Office along with a money order or certified check, payable to the Clerk, United States District Court, in payment of the special assessments.   Failure to do so, unless the Court has made a previous finding of indigence, will relieve the government of its obligation to recommend a reduction in the offense level under the guidelines for acceptance of responsibility.

8.    Defendant is advised and understands that:

    a.  The government has the right, in a prosecution for perjury or making a false statement, to use against Defendant any statement that Defendant gives under oath;

    b.  Defendant has the right to plead not guilty, or, having already so pleaded, to persist in that plea;

    c.  Defendant has the right to a jury trial;

    d.  Defendant has the right to be represented by counsel – and if necessary have the Court appoint counsel – at trial and every other stage of the proceeding;

  e. Defendant has the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

  f. Defendant waives these trial rights if the Court accepts a plea of guilty.

9. The government reserves its full right of allocution, including the right to present any information to the Court for its consideration in fashioning an appropriate sentence, the right to correct misstatements, misrepresentations, or omissions by Defendant, and to answer any questions asked by the Court.

10. Except for paragraphs 2 and 4 above, the parties have made no agreement concerning the application of the guidelines in this case.

11. Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed subject to the provisions of paragraph 2a. The Court is not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations.

12. Defendant hereby waives Defendant's right to appeal the conviction and sentence imposed by the Court, if the sentence imposed by the Court is within or below the guideline range determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

13. This agreement is binding on the government only if Defendant pleads guilty, fulfills all Defendant's obligations under the agreement, does not engage in any

conduct constituting obstruction of justice under § 3C1.1 of the guidelines, and does not commit any new offenses. Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate. If that occurs, Defendant shall not have the right to withdraw Defendant's guilty plea.

14. This agreement is limited to the District of Rhode Island and does not bind any other federal, state, or local prosecutive authorities.

15. This agreement constitutes the entire agreement between the parties. No other promises or inducements have been made concerning the plea in this case. Defendant acknowledges that no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement. Any additions, deletions, or modifications to this agreement must be made in writing and signed by all the parties in order to be effective.

16. Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's knowledge and belief, Defendant understands the agreement.

17. Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions.

_____  3/16/22
**JASON COLLYMORE** *by J. Dixon-Acosta, Esq. w/ permission of mr. collymore*  Date
Defendant

_____  3/16/22
**J. DIXON-ACOSTA, ESQ.**  Date
Counsel for Defendant

_____  3/16/22
**ZECHARIAH CHAFEE**  Date
Assistant U.S. Attorney

_____  3/16/22
**SANDRA R. HEBERT** /zc  Date
Assistant U.S. Attorney
Chief, Criminal Division